Good morning, Your Honors. Good morning. My name is Mark Kogan. I'm here on behalf of NewPlan, Excel Realty Trust, and Excel Realty Partners, LLP. In light of your invitation, I thought it might be useful to express what order it is we're here looking for this court to enter. We are requesting that the court reverse and render with judgment for the defendant, Excel, on the rescission claim, so that further proceedings on the jury breach of contract case can go forward. Or alternatively, if that judgment is not reversed and rendered, that the rescission judgment be remanded for further proceedings to adjust the award in rescission in two principal respects that I would address today. The first being what we consider to be the erroneous standard of the rent credit adjustment, where the district judge, even though there was no fraud in this case, required that Excel pay the cost five years earlier of the building, but only awarded a rent credit going forward for the ground lease itself. And then another subject for that remand, we believe, would be the fact that the used equipment that was not returned, not given to Excel, but rather sold to third parties, should not have been charged in rescission at cost. Well, before we open the door and get into the rescission room, the district court concluded that you should be stopped, your client should be stopped from raising the issue, because it didn't raise its head until about the seventh, eighth, or ninth day of trial, right? That's what the district court felt. We respectfully believe that the district court misapplied the estoppel principles, and we also respectfully believe that it wasn't necessary for the court to reach those considerations, because clearly in the pretrial order, the Excel had asserted that rescission ought not be had on the grounds that these were separate and distinct obligations. And we set that out in the briefing paper. But did you rely, did your, in the pretrial order, did you state that one of your defenses was Section 4.5 of the lease? The reference, explicit reference to 4.5 was not made. But you did rely upon generally your rights and remedies under the agreement? Yes. And more specifically than that, I think we did characterize these things as not being material failures of consideration, that these were not conditions, and that these were separate and distinct obligations. And we expressly provided that this would, that rescission was not justified on those bases. It's our position that it's not necessary for a party, when the subject matter at hand is the very written agreement of the parties, to expressly denote sentence by sentence or section by section what it is that one is relying on. I would remind this Court that the district, even the district court, made a specific finding that Section 4.5, which is also the section in which the independent covenant language appears, was an explicitly negotiated provision. This was not some boilerplate. It was actually strikeouts through, so that, and the judge made a specific finding that it was no surprise that could be pled as to the existence of that clause. I'm sorry. You go ahead. No, go right ahead. No, I'll follow. Go ahead. This, the last question, is what's our standard of review for the district court's determination that you should be estopped from raising this defense? I think on the estoppel, it's an abuse of discretion. However, I respectfully submit that this Court's review of our independent covenant position is plenary. I believe that to be a matter of the law. I think you had a question. Yeah. Well, it actually goes to the independent covenant question. If the contract itself is rescinded, why should we pay any attention at all to any of the provisions in the contract? Because the law in California is clear that anti-rescissionary clauses are enforced and are an abutment against the remedy of rescission. Unless we find that it goes to the heart of the deal, right? Yes. The materiality question, however, under California, and I think generally speaking, arises when the agreement is silent as to whether or not the performance of the particular covenants involved are independent covenants or conditions. Well, let me tell you what my problem is. Maybe you can address it. As I read the California cases and as I look at the facts in this case, what's unusual is this is more than just a straight commercial lease for space that your What happened here was that Flagship, basically in reliance on this deal, invested a substantial sum of money in clearing the lot and then building a suit to build restaurant for buffet-style service. And it seems pretty clear to me that the jury found that by preventing the operation of that buffet-style service by leasing to a competing Chinese buffet restaurant, your client basically undercut the heart of this deal by making the investment almost worthless. And if that's the case, then why shouldn't I view the entire provision that you're arguing here as a conditional contract? And that because of the fact that your breach went to the heart of it, we should not enforce the independent covenant, as you are arguing. In fact, I see two questions in the Court's narrative there. If I may, in the first, if I may address the second question first. Take it any way you want, but I just want to tell you what my concern is. I understand. On the second point, the materiality under every one of the California cases that consider materiality are the heart of the matter. It is because the parties had not in advance set forth an agreement, an explicit agreement on that. Namely, if you go through each and every one of the cases, the court in that, in those cases, was called upon to make precisely the factual analysis that Your Honor just went through. But that is not to be done when the parties have already explicitly said these are not conditions. Now, the early — well, Your Honor, I'm sorry. The problem I'm having with what you just said is that the California cases do talk about looking at the commercial reality of the case. And that's what I'm reacting to, because it seems to me pretty self-evident that Flagship would never have entered into this deal. And I think you had testimony to that effect at trial from the owner of Flagship, that they wouldn't have entered into the deal if they had known that their ability to operate a buffet-style restaurant was going to be impeded by leasing to a competitor. I don't doubt that that's how he felt. But the agreement that he signed was to a different effect. I don't want to leave — I do want to address what I considered to be, you know, the earlier point that Your Honor was making, which is about the jury verdict. We've briefed pretty extensively what we think is the over-reliance on the cancellation charge, the prospective cancellation charge that was given to the jury. And we don't think that in any way, shape or form, would that charge be something that could transmute the finding of breach for prospective — on the breach of contract claim into a finding by the jury, which we don't think would be a jury finding in the first place, as to a failure of consideration or an imposition of a condition. So it's for those — in other words, what — But wasn't the case presented to the jury tried on a theory of material breach by — For the breach of contract, but the district judge had ruled in — before the jury was ever set up that all matters — that the matters pertaining to rescission would be, as the Court put it, reserved for the Court after the breach of contract phase. So that — That leads to a question I have. Oh, excuse me. It's a general procedural question. The whole matter could have been tried to the jury, right? I'm sorry, sir? The entire matter could have been tried to the jury, with the jury rendering its verdict and its assessment of damages in this case. I think that — But it wasn't. No. So — It was not. That's true. I agree. But it's very unclear, and I'll tell you, I've read through all of the various permutations of what the attorney said and what the judge said, the attorney said, and so forth, as to what was reserved. Now, you just said, I think, that the entire question of rescission was reserved to the judge. Now, as I was reading it, what was reserved to the judge was the amount of damages for rescission. Well, Your Honor, we think that the question of whether or not the contract should be — could be rescinded was the legal question that the judge would be addressing after the breach of contract trial was over, but only in the event if there was an election in that way. One of the problems I've had from the beginning with the estoppel argument or the estoppel position and the district judge's finding on estoppel is that no one knew whether or not the election would ever have been made. We, in fact, raised 4.5 in a different context and did so explicitly long before any election was made. So the usual circumstances of estoppel simply aren't present here. We didn't know, and no one knew, whether or not the plaintiff would simply act on the jury verdict. Didn't the pretrial order indicate that the jury was to decide both the questions of the breach of contract and the rescission question? That's the way the pretrial order was set up, as I see it. Your Honor, I don't — I don't think that is the case, and I don't think that that's the way on the ground the case proceeded, because — Well, what's the point — what's the point — excuse me. I'm sorry? What is the point of having 4.5 in the — in the trial before the jury if the jury wasn't to be considering all this? The answer to that is it was only raised in connection with a constructive eviction which was before the jury. And if one looks at the actual colloquy in which 4.5 was referenced, it wasn't about rescission. It was about the bar to constructive eviction. And in further answer to Your Honor's question, when the jury was returned, the district judge asked, is there a reason why the verdict ought not be recorded as the judgment? And it was only at that time that the plaintiff asserted that they wanted to pursue rescission. No one knew up until that moment whether or not they were going to do so or not. And if — I respectfully submit that if one examines the record as to when 4.5 was actually asserted, it was in the context of the constructive eviction, not any rescission issue. So I'm focused on this. Your position is that the district judge should have read and interpreted Section 4.5 and perhaps granted summary judgment or some other form of relief before the case ever went to the jury, telling Flagship that under the agreement they signed, and specifically Clause 4.5, that they were not entitled to rescission but that the case thereafter would proceed on damages for simple breach of contract? In hindsight, I think procedurally that would have been a better way to go. I think that in fairness to the pretrial proceedings in this case were very unusual, because the case was before Judge Coyle, who two months before the trial had a heart attack, and then it was shifted to Judge Wanger. So — and there — I think you're right. If it had — in a more perfect world, that's how it would have said, don't bother thinking about the election of rescission later. How would that perfect world have been created? By your filing a motion for partial summary judgment? I think that the motion for partial summary judgment, which was in fact filed and which dismissed — once the district court dismissed the fraud claims so there would be no possible basis under the contract for rescission, a supplemental motion would have been an efficient and, in my judgment, preferable way to proceed. I do not believe that upon failure you could do so one becomes stopped to assert the contract itself. Okay. You've got about three minutes. You want to save some rebuttal time, or is there something else you wanted to raise? I do have a further question on that. I'm sorry. If this matter was before the jury, it would seem to me that the appropriate procedure would have been to make a 50A motion as a matter of law that this matter of rescission could not be considered at all. And then if it were denied, renewed under a 50B motion. But none of that was ever done. Well, the rescission was going to be handled after the jury verdict. Nobody knew if they were going to elect it at that point. Well, the way I read it is that the rescission was only really to determine the damages, not to determine the merits of rescission. Well, we disagree with that, Your Honor. And we would point out that no one has ever identified anything that trial counsel actually said that is the basis of this estoppel or that or the assertion which underlies It's not what counsel said. It's what counsel failed to say. That's what we're wrestling with. It's an act by omission. Well, but I don't believe that if one tracks this is now to the estoppel point. Yeah. I don't think the court if to the extent the court adopted anything, which the court said they adopted the pretrial order, it's very clear that we have asserted explicitly in the pretrial order that rescission ought not be had. And it's not as though we there's a somebody said, you know, for some strategic advantage, you know, we're not going to assert 4.5. We're just going to let the rescission claim go. And therefore, and the court acted on that and entered an order favorable to excel based on that. And then we changed our mind and said, well, now that we've got them where we want them, we're going to reassert 4.5. Those are the missing components in a judicial estoppel circumstance as far as I'm concerned and as far as our arguments in the briefing. I believe under the rules of court, I'm eating into my rebuttal time by doing this. So I would like to sit down if unless there's another question. Okay. We'll give you a minute. I don't know. Are there any other questions, Judge Hugg? No. Okay. No questions. We'll give you a minute when you're up for rebuttal. He just said he had no questions. We'll hear from Flagship at this time. Good morning, Your Honors. May it please the Court. John Fairbrook on behalf of Plaintiff Appellee and Cross Appellant. I'd like to pick up where counsel left off and discuss about 4.5 and address some of the comments made. Defendants argue 4.5 in two respects. First, they argue that language in Section 4.5 of the lease should have been utilized by the court and or the jury in interpreting the agreement, and the conclusion they draw is that the interpretation should have been that these obligations were severable and therefore not material breach, independent covenants, and therefore not a material breach. The second way they attempt to use 4.5 is by claiming that it constitutes an express waiver of rescission. I don't think it does that, but that's their argument. And that would have been required to be raised in the context of an affirmative defense. An express waiver is certainly an affirmative defense. It was not raised. Do you think it was an affirmative defense and not a limitation on your remedies? Well, either way, Your Honor, it is a matter which needs to be asserted. A waiver certainly is an affirmative defense. I think a limitation or remedy to the extent that exists in a contract and is going to be asserted is an affirmative defense. What if the pre-trial order Excel had taken, had simply said, here's our defense. We rely upon every word of the lease, period. Well, I know a number of district judges that probably wouldn't be satisfied with that overly general description in a pre-trial conference order. And the reason for that is that these conferences are designed to narrow the issues and focus both the Court and counsel on those issues that are going to be actually disputed and how they're going to be addressed. And counsel stated that there are statements in the pre-trial conference which he claimed satisfy that. They don't. There are two that he lists. He lists these in his reply brief. The first one is whether defendant's performance of the exclusive use provision found in the ground lease was a material condition for plaintiff's obligations under the ground lease and or guarantee of the lease, which is, again, a question of materiality which was directly submitted to the jury. The second was whether the breach of the lease exclusive constitutes a material failure of consideration. Neither of these idea this is what counsel says is in his pre-trial conference statement and what preserves this defense. Neither of those address 4.5. Neither of those suggest that any of these would constitute a defensive waiver. And then finally, Your Honor, and I think Justice Huggs mentioned it, that no affirmative motion was made to ever have the Court apply this interpretation, and it should have been done before the matter was submitted to the jury. Here's what my impression of 4.5 of the lease that your client signed says, that flagship waives any right to quit, terminate, or surrender the lease, and that the lease would, quote, continue in full force and effect, notwithstanding any restriction or prevention or interference with any use of the premises. What part of waived did your client not understand when they signed the lease? Well, I think certainly waived, I can't answer that, Your Honor. I never asked my client that. But the point is, is it defines premises. Premises is defined very narrowly as the very literal building that my client erected and does not encounter the Four Seasons Restaurant and the other portions of the shopping center. So if strictly applied, this would be we this would would talk about a physical interference with our client's restaurant. And that's how it was argued. They argued that this was a defense to constructive eviction, not that it constituted a wholesale waiver of rescission. And I think the authorities that we cited to the effect that rescission basically voids the contract ab initio as instructed. In this case, we're not dealing with a mistake of fact or some innocent basis for rescission, but a breach. In this case, material breach. And I'd like to clarify, excuse me, I'd like to clarify what I think is a crucial matter in this, and that is what your position of the parties was as to what was going to be decided by a jury trial and what was going to be decided by the court. Yes, Your Honor. The — I think your assessment is accurate. What was clearly the case was that we were — the question of rescission and the facts allowing the court to issue that — that judgment were going to be directed to the jury and, in fact, were, both in questions 1 and 2 of the special verdict. Was there a breach, and was it material? And, in fact, it was identified in the instruction conference that that was the purpose of it, and actually I identified it to the jury in closing argument that that was the purpose of the question was to support our claim for rescission. The only question that was reserved was the question of damages, as Your Honor has indicated, and that was stated certainly by — by plaintiffs, and also in argument by Mr. Carroll, who was one of the defendants counsel, who argued vociferously that the total economic harm should not go to the jury, but that should, quote, unquote, be considered by the court. And that was in arguments that predated the instructions. And on that basis, it seemed clear, and this is, I believe, what Judge Wenger found, that everybody was operating under the assumption that rescission was reserved, and the question of damages would go to the jury. So at the end of the day, after the jury returned its verdict in a dollar amount, your client elected rescission? Yes, Your Honor. And that is the time at which it's appropriate to elect rescission is after the initial jury verdict, and that's, of course, why we had that second question on material breach, was so the court could, in a classic special verdict format, take the factual finding of materiality, apply that to the claim of rescission, and enter the judgment, in fact, as he did. I have a follow-on question, which you may like. At the moment your client elected rescission, was there any motion to deny rescission based on 4.5? What happened is after the verdict, I indicated to the Court that there was a question of our election and that we and the Court requested briefing. At that point, they first raised the bar, the claim bar of 4.5, Your Honor, at that point, after the jury had already found materiality. And I would submit, Your Honor, that if they had an argument, it needed to go to the jury, either by way of a motion to conclude this from going to the jury or by some additional instruction. And again, I'll underscore, they never objected or offered a contrary instruction on materiality. Once the jury came back, the district judge said, in effect, is there any reason this should not be recorded as the judgment of the Court? And at that point, your client said, we want to elect rescission or words to that effect. Yes, Your Honor, I did. And the district court said, I'll entertain briefing on the subject. And you briefed in favor of your client being able to avail itself of rescission. Is that correct? Yes, Your Honor. And the other side, Excel, briefed in favor of saying that 4.5, under that clause, you had waived that right. Is that correct? That's correct, Your Honor. All right. And as I see it, it's still a major question as to what was reserved to the Court and what was decided by the jury. If, as a matter of fact, the only matter reserved to the Court was damages, if that's what you said, what I'm now electing rescission, that you were Well, I think with the jury finding, Your Honor, I think it was a foregone conclusion, certainly in my mind, that we had established what we needed to for the Court to enter judgment on rescission. And, yes, that the only open question were the matter of the restitutionary and consequential damages that would be appropriate. So I agree with that. That's why that was the question. Yeah, but it's still a question in my mind as to what was reserved to the Court to decide. Because if the jury was only to decide the question of the breach of contract, then that's a whole different view of what the Court is now expected to do. Is the Court expected to go through whether rescission was appropriate or not? And I would answer that in the negative. I would say that it was clear that the materiality question was presented to the jury on the basis of rescission. It was — in fact, I stopped the Court during the instruction. I said, wait a second, we've got to have materiality. And the Court said, number two, Mr. Fairbairn, that's where materiality goes to rescission. I said, great. I stand corrected. We have it in the verdict. And then we went forward and instructed the jury. But I think Your Honor's question is answered by the provisions of Rule 49A. And Rule 49A is the provision that says that when you enter a special verdict, anything that is not specifically instructed to the jury is automatically reserved to the Court. And what happened here is, is that after the jury returned the special verdict, and after everything had been submitted, and after the briefing on the rescission question, the Court recharacterized the special verdict and said it had aspects of both special verdicts and general verdicts, but then characterized it as a general verdict, and on that basis said that the defendants still had a right to a jury trial. And I submit that was — that was abject error. The Floyd v. Laws case, which is a Ninth Circuit case, is precedent, which I believe Judge Wenger was bound to follow, and it establishes a very, very simple and clear rule. If the Court and the counsel call a verdict a special verdict, then it's a special verdict. And the Court recognizes, all the courts recognize, that it's somewhat of a slippery slope when you're talking about whether the contents of a particular verdict raises legal questions or purely factual questions, and whether one verdict might appropriately be denominated one versus the other. But lawyers in Federal rules and their application, and we have to advise our clients on the basis of those. We have to make decisions in trial on the basis of our understanding and a consistent application of those rules. And certainly, I had in my mind the provisions of 49 when the special verdict was submitted and when we drafted it. And I believe counsel have a right to — to, when something is very clear and there's really no question that all parties are considering it, to have a court recharacterize it after the fact is not only unfair, it's inconsistent, and would give counsel — would relegate them to sheer speculation in terms of decisions and the actions that they took during the course of the trial. Before this trial started, Judge Wenger had a conference with the lawyers, and we talked about the pretrial conference statement, and he specifically admonished me personally that if any — if any changes had to be made, we had to establish the manifest injustice requirement of Rule 16. I submit to you that that same provision would be applicable to the defendants and — and that those matters that were identified in the jury verdict and — and that when the defendants submitted the special verdict without objection, where the special verdict is not, in my mind, clearly a general verdict, although Judge Wenger did say that the question of a jury trial was foreclosed and that any matter that was not addressed by the jury should have been addressed by Judge Wenger, as a trier of fact, not on the basis of a rather restrictive application of what he felt his role was in assessing damages with this — what I will — perhaps a sort of damocles of the defendant's jury trial hanging over the proceeding. And that's not what I believe Judge Wenger did. I would like for a moment just to address our — Roberts, let me just interrupt you. It — it struck me that there was also a colloquy between the Court and counsel at this time in the post-verdict proceedings asking counsel whether the jury could be discharged. Is that correct? I thought I read somewhere in the transcript that — that the court basically said, you know, can I let the jury go? And there was no objection raised by either side. I — I honestly don't remember that, but I can't imagine why I would have objected at that point, because we had submitted and had a ruling or a decision, a verdict from a jury with respect to all the matters which I believe were an issue before them. Well, that's where I was leading, and maybe I should ask your opponent on rebuttal the same question, because it strikes me that if the judge asks you at that point in the trial, may I discharge the jury, it's incumbent upon any lawyer who thinks that we still need the jury to resolve issues to say, well, Your Honor, we still have this unresolved rescission damages question, and I think I'm entitled to a jury on that issue. That certainly would have. But again, I think everyone was proceeding under the assumption that 49A, I believe, would have applied here, and there would have been no reason for anybody to suggest otherwise, given the context. And, in fact, as applied, the verdict was, in fact, a special verdict. The two questions that the Court had to apply. The problem, though, with regard to damages is that you get into an entirely different theory of damages on rescission than you do for breach of contract. Absolutely. And that — and the Court struggled with some of the proof problems with regard to some of the damage elements that you submitted post-trial. He didn't need to, but I think he did because he felt that if he considered the evidence that had been presented, much of it which was expert testimony, that he would have then stepped into the whole jury trial confrontation that defendants had joined here. And so he constrained himself, I think, overly in his assessment and in his determination that you had to have, in fact, a document with the actual number on it, and he — and he discounted testimony to this effect. He discounted — one clear example of this is in the accrued but unpaid interest. That evidence was presented through our expert forensic CPA, Rob Wallace, who had to calculate that number on the basis of the interest rate and the promissory note that Flagship had received from the money store. It's not — it's a rate that had to be calculated, and he calculated that number at some 570-some-odd thousand dollars. Well, the Court said, I'm not going to accept that evidence. There was no contrary evidence. In fact, Mr. Wallace wasn't even cross-examined as to the correctness of the calculation or anything like that. But if you — if you are correct that under Rule 49a, that the district court had reserved to itself the determination of all damages relating to rescission, then it is, in effect, acting as a fact-finder in a bench trial in order to resolve any kind of a dispute that arises. That's my — that's my assignment of error in Judge Wenger is that he acted as a calculator as opposed to a fact-finder and overly constrained himself in the assessment of damages so as not to invoke that jury trial. But going back to the last point you were arguing, why can't, in his role as the fact-finder, Judge Wenger look at the testimony of Mr. Wallace and say, well, I'm going to accept part of what he says, but I'm not going to accept all of it? He absolutely could, Your Honor, had he adopted that fact-finding role. But my — my point is, is that he never did. And he never allowed himself to reject or accept it because he constrained himself overly by saying, you know, if it's not a real number here. And he did that because of this tale of this argument of this jury trial. And so it had to be completely uncontroverted, almost empirical. In fact, the judgment is probably the minimum amount that is reflected in our evidence. And he disregarded anything that was not subject to an actual number that he could verify. And therefore, he did not act as a fact-finder in assessing the damages, and he should have. One of the — one of the things that troubles me, first of all, that this very unusual procedure was invoked without the attorneys getting together and saying, all right, what is reserved, who's going to decide what, and so forth. So instead of having to look through phone conversations and what someone said on some occasion or other, we're left not really effectively knowing what was supposed to be decided by a jury and what was supposed to be decided by the judge. We just have to try to make something out of the various conversations. But it seems like if the matter was to be decided by the jury and only the damages reserved to the judge, then there should have been the 50-A motion and so forth as a matter of law. If, on the other hand, the only thing that the jury was to decide was the breach of contract, then I can't see how there's any judicial estoppel involved at all because it wasn't involved in that case. Well, again, Your Honor, I don't quarrel with that assessment, but the facts are very clear that the question went on the question of materiality, that that was argued by me in closing argument as only relevant to rescission. In the jury instruction conference relative to that question, I specifically pointed out the necessity of that second question for rescission. Materiality was then utilized by the court, the finding by the jury, apply it to the law of the case to then confirm rescission. So in my mind, there's really no dispute that materiality and that aspect of rescission went to the jury by all concerns. And, Your Honor, I would say this. In hindsight, of course, there were discussions on the phones. I did not document what I felt to be an agreement very well. I don't quarrel with Judge Wanger for not adopting that. It wasn't done very well. But I do feel that the rules of 49A, that I had a right to rely on that, that it was submitted as a special verdict, and that notwithstanding my failure to document what I believed to be an understanding, and I agree with Your Honor that that is how these things should be worked out during trial, I endeavored to do that, didn't document it very well this time. But notwithstanding that, Rule 49A is very clear, that if you do a special verdict and Floyd v. Law says it's a special verdict if you call it that, then the matter is going to be reserved. And in this case, the only thing that was reserved was, in fact, the question of damages, which the court should have considered as a prior fact. As a separate basis for that, I don't believe that they had an absolute right to a jury trial in any event, and that is because this was a — this is more akin to the old judicial rescission as opposed to a rescission before. If you look at the Runyon cases and the history of rescission, this is more akin to the equitable rescission. We had a — we had a rescission of a 25-year lease that would have obligated my client for a long time, a rescission of a guarantee, which had personal obligations. And so, really, the damages were incidental to the overall question of rescission, which was, in fact, a joint jury. You're way over your time. Thank you for your argument. We'll hear rebuttal at this time. Your Honor, we've produced an extenso in our briefing papers on page 20 and 21 of our principal brief, the actual charge to the jury on materiality. That charge was entirely a breach-of-contract charge dealing with cancellation prospectively. There was no charge to the jury respecting rescission whatsoever. But when you get right down to it, if the theory of the appellee, if you will, in this case, is that 40 — the district judge erred in regarding the verdict as a general verdict, because this was fully briefed below, and it's fully briefed in this Court, clearly, the district judge wasn't thinking that the jury's finding was a special verdict that would end the Court's consideration. That's why I think — why the judge allowed all the briefing he did on the merits of whether or not rescission ought to have been allowed. And if you look at the colloquy, the actual record respecting the colloquy, this was done not about the jury instructions. The jury instructions were set. There wasn't any jury instruction on rescission. It was about the verdict sheet. And the verdict sheet dealt with the materiality question that the jury had been instructed on, which was about prospective cancellation based on material breach in the breach of contract claim. Now, nothing that Stephen Carroll, counsel for excellence at trial, said at all. There was nothing there that would merit a subsequent estoppel. And, Your Honor, the question you wanted to put — you were — there was one question pending as to — Well, I mean, with the indulgence of the presiding jury. Your Honor, I don't want to overstay my welcome. No, no, no, no, no. But I would like to know the answer from your perspective. From my perspective, Your Honor, given the actual charge to the jury, which was on materiality, prospective breach of contract, if, when the district judge asks, is there anything further for the jury, counsel for the plaintiff is charged to know that the jury has not been instructed on rescissionary considerations, and the jury has not been instructed on failure of consideration, conditions, and materiality in that context, and is then incumbent upon counsel to say, well, Your Honor, either we're going to have to have the jury make that finding or — and therefore consider it for the jury, or the court will do so. I think that a fair reading of all of the briefing that took place after that is that everybody figured the judge was going to do so. Okay. That's my answer to Your Honor. Any other questions, Judge Huck? No questions. Okay. Thank you both for your argument. It's a very interesting case, and not in the least bit simple. But we appreciate your help today. Thank you kindly. Thank you both for your argument. The case just argued will be submitted for decision, and the Court will stand in recess for the day.
judges: Hug, Hawkins, Tallman